HAWTHORNE, Justice.
 

 Relator and appellant, Jesse L. Webb, Sr., as assessor, a resident taxpayer, and a registered voter of the Parish of East Baton Rouge, instituted this suit seeking a writ of mandamus to compel the parish council of that parish and the individual members thereof, in their official capacities, to call an election for the purpose of submitting to the qualified electors of the parish 101 proposed amendments to the plan of government of the City of Baton Rouge and the Parish of East Baton Rouge, which had been adopted in accordance with Section 3(a) of Article 14 of the Constitution of this state. Respondents and appellees filed an exception of no cause and no right of action and an answer. After trial on the merits the district judge sustained the exception and dismissed relator’s suit. Relator has appealed.
 

 In sustaining the exception the trial judge concluded (1) that relator did not have a real and actual interest and therefore was without right to institute this proceeding ; (2) that there was not a sufficient number of signers to a petition which contained the full text of the proposed amendments and which had been submitted to the parish council with the request that that body call a special election to submit the proposed amendments to the electorate of East Baton Rouge Parish, pursuant to Section 11.09 of the plan of government of the Parish of East Baton Rouge and the City of Baton Rouge, and (3) that the proposed amendments were illegal and unconstitutional, and, even if adopted, could not be put into effect for this reason.
 

 Section 11.09 of the plan of government reads, insofar as it may be pertinent here, as follows: “Amendments of this plan of government may be proposed by majority vote of all the members elected to the
 
 *935
 
 parish council or by a petition containing the full text of the proposed amendment
 
 signed by qualified voters of East Baton Rouge Parish in number equal to ten per cent of the number of votes cast for sheriff at the last preceding election of parish officers
 
 and filed in the office of the parish clerk. A proposed amendment shall be submitted by the parish council to the qualified voters of the parish at a special election to be called and held by the parish council not less than sixty nor more than ninety days after the passage of the amendment by the parish council or the filing of the petition * * (Italics ours.)
 

 The petition in the instant case as submitted to the council contained the names of 212 qualified electors of the parish, and respondents contend, and the trial judge found, as stated above, that the petition did not contain a sufficient number of signatures pursuant to Section 11.09, quoted above.
 

 On January 20, 1950, according to a certificate of the register of voters, there were over 30,000 qualified electors of the Parish of East Baton Rouge, and at the last Democratic primary election for sheriff, held on January 20, 1948, which was the election preceding the petition filed with the council, over 27,000 electors voted. On the other hand, only about 1,000 of the qualified electors voted at the last preceding general election for sheriff held in that parish. Relator contends that, under the provision of Section 11.09 of the plan of government, the signatures to the petition of only 10 per cent of the number of voters who cast their votes at this general election were necessary, that is to say, 100, and that the petition in the instant case is sufficient since it contained the names of 212 qualified electors.
 

 The trial judge in concluding that the petition contained an insufficient number of signatures stated in his reasons for judgment:
 

 “ * * * The question is then wh ether the word ‘election’ in the Plan of Government refers to General Election or Primary Election. No qualifying words are used.
 

 “The learned writers of our Civil Code wisely provided that where the language is not clear and requires interpretation the following shall guide those seeking to interpret such law: B
 

 “ ‘The words of a law are generally to be understood in their most usual signification, without attending so much to the niceties of grammar rules as to the general and popular use of the words.’ Art. 14, Revised Civil Code.
 

 “ 'The universal and most effectual way of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the Legislature to enact it.’ Art.. 18, Revised Civil Code.
 

 “Keeping in mind the above quoted articles of the Civil Code let us now examine the word ‘election’ used in the Plan of Gov
 
 *937
 
 ■ernment. In East Baton Rouge Parish we have only one political party and, hence, the Primary Election is the election in the popular sense of the word. Nomination by the Democratic Party is tantamount to election and it is difficult to get any one to go to the polls at the General Election because ■every one knows that those who have been nominated will be elected without opposition. This is clearly demonstrated in this case for over 27,000 people voted in the last Primary Election for Sheriff while only about 1,000 voted in the last General Election for Sheriff. Thus, this Court believes that the drafters of the Plan meant Primary Election for Sheriff and not General Election for Sheriff. It is inconceivable that they would have intended to subject thousands of voters of this Parish to the trouble and expense of an election upon the petition of a mere handful of people. It seems obvious to this Court that the reason they referred to the election of the Sheriff was because that is always a hotly contested election where a large number of voters participate. They thus wanted a substantial number of voters to be required to present a petition in order
 
 to
 
 subject the voters of the Parish to the trouble and expense of an election. If they had meant General Election there would have’ been no purpose whatever in referring to the Sheriff because the General Election for Sheriff . is not any different from any other election. It is obvious, in the opinion of this court, that the drafters of the Plan, clearly intended to refer to a preceding election in which a large number of voters had participated, and if this conclusion is correct, then they must have meant the Primary Election for Sheriff which in the popular sense of the word, as already pointed out, is what the average man considers the election in the Parish of East Baton Rouge.
 

 “Counsel for plaintiff have cited some common law authorities to the effect that a Primary Election is not an election within the common acceptance of that term. That is undoubtedly true in most of the states where the primary is merely the first step
 
 in
 
 a contest between two fairly evenly matched parties. However, this condition exists not here at all, and the Primary Election as far as the voters and the candidates themselves are concerned is the election.”
 

 In argument before this court the attorneys for relator contended that the writers of the plan of
 
 government
 
 meant “general election” when they used the word “election” in this section because further on in the same section the worcl “primary” was used when they meant “primary election”. This argument is persuasive but not controlling in the instant case.
 

 To say that a petition is sufficient which contains the signatures- of only 10 per cent of the number of those voting for the sheriff at the last preceding general election of parish officers, which under the facts of this case would be approximately 100, in our opinion would be to construe Section 11.09 in such a manner as to give it an absurd or ridiculous meaning. Under such a con
 
 *939
 
 struction a small group of disgruntled citizens could compel the parish council to call one election after another for the purpose of submitting to the qualified electors of the parish proposed amendments to the plan of government, each of such elections costing the taxpayers of the parish, according to the record, a sum approximating $10,000. Moreover, such a construction would permit a small group of less than 1 per cent of the qualified electors who voted at the last primary election for sheriff to harass the parish council or the individual members thereof in their official capacities.
 

 In State ex rel. Womack et al. v. Jones et al., 201 La. 637, 10 So.2d 213, this court stated that the function of the courts is to interpret the laws so as to give them the meaning which the lawmakers obviously intended them to have, and not to construe them so as to give them absurd or ridiculous meanings. In interpreting and construing the word “election” in the portion of the section quoted above to mean “primary election”, we are following this rule of statutory construction and are giving to the section the meaning obviously intended by its drafters.
 

 Relator contends that the word “election” as used in the section means “general election”, and that a primary election is not an election within the common acceptation of that term.
 

 The word “election” as found in a statute or in the Constitution usually signifies and means “general election”, but this is not necessarily so, for the rule is not without exception. For instance, in Peck v. City of New Orleans et al., 199 La. 76, 5 So.2d 508, 518, this court in construing Section 7 of Article 8 of the Constitution of this state construed the word “elections” in the clause “In all elections by the people the electorate shall vote by ballot * * * ” to mean all elections, primary and otherwise, and not just general elections. In United States v. Classic et al., 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368, the Supreme Court of the United States in interpreting the meaning of Article 1, Section 4, of the United States Constitution held that a Louisiana primary election was an election within the meaning and terms of that section.
 

 Since we have concluded that there was not a sufficient number of signers to the petition seeking the submission of the proposed amendments under the provisions of Section 11.09 of the plan of government, it is not necessary for us to discuss or pass upon the other reasons given by the trial judge in dismissing relator’s suit.
 

 For the reasons assigned, the judgment appealed from is affirmed, relator-appellant to pay all costs.