pGRIMILLION, J.,
dissenting.
I am cognizant of that portion of La.R.S. 23:1102(0(1) which the majority relies on in finding that Quality Fabricators must reimburse Eagle Pacific the full sum of $124,905.90, “to the extent of the total amount of compensation benefits and medical benefits previously paid to or on behalf of [Lavergne].”
However, I respectfully disagree as to how my colleagues on the majority construe the statute and would find that Quality Fabricators should be liable only for $25,000 for “funds received [by Lavergne] as a result of the compromise.” See La. R.S. 23:1102(0(1). The majority opinion cites the last portion of La.R.S. 23:1102(0(1) in its opinion, neglecting the first part of the statute which reads:
When a suit has been filed against a third party defendant in which the employer or his insurer has intervened, if the third party defendant or his insurer fails to obtain written approval of the compromise from the employer or his insurer at the time of or prior to such compromise and the employee fails to pay to the employer or his insurer the total amount of compensation benefits and medical benefits out of the funds received as a result of the compromise. ...
(Emphasis added).
12In awarding Eagle Pacific $25,000 in reimbursement, the trial court stated:
Well, I do find that they’re entitled to summary judgment, but I limit the amount of recovery as a matter of law that they’re entitled to, to twenty-five thousand dollars based upon 23:1102(C) insofar as it states that the compensation carrier is entitled to a reimbursement or a payment out of the funds received as a result of a compromise by the plaintiff. Since Quality gave twenty-five thousand dollars to Mr. Lavergne, that’s the extent that I think the Legislature intended that you should recover from the plaintiff as well.
I have found no other cases in which the settlement amount received by the injured employee was less than the amount of workers’ compensation paid by the employer. However, I agree with the trial court in that I do not believe the Legislature intended the employer or its insurer to recoup any more than the employee received in settlement.
The rules pertaining to statutory interpretation were recently laid out by the supreme court in Palmer v. Louisiana State Board of Elementary and Secondary Education, 02-2043, pp. 4-6 (La.4/9/03), 842 So.2d 363, 367-68:
Principles of judicial interpretation of statutes are designed to ascertain and enforce the intent of the legislature in enacting the statute. SWAT 24 Shreveport Bossier, Inc. v. Bond, 2000-1695 *1155 (La.6/29/01), 808 So.2d 294[,] [c]iting Stogner v. Stogner, 98-3044, p. 5 (La.7/7/99), 739 So.2d 762, 766; State v. Piazza, 596 So.2d 817, 819 (La.1992). The fundamental question in' all cases of statutory construction is legislative intent and the reasons that prompted the legislature to enact the law. Succession of Boyter, 99-0761, p. 9 (La.1/7/00), 756 So.2d 1122, 1128. When a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written, with no further inquiry made in search of the legislative intent. La. C.C. art. 9; La. R.S. 1:4. However, when" a law is susceptible of different meanings, “it must be interpreted as having the meaning that best conforms to the purpose of the law.” La. C.C. art. 10.
The meaning and intent of a law is determined by considering the law in its entirety and all other laws concerning the same subject matter |3and construing the provision in a mánner that is consistent with the express terms of the statute and with the obvious intent of the lawmaker in enacting it. Bond, supra at 302; Boyter, supra at 1129; Stogner, supra at 766. The statute must therefore be applied and interpreted in a manner that is logical and consistent with the presumed fair purpose and intention the legislature had in enacting it. Boyter, 756 [So.2d] at 1129. Courts should give effect to all parts of a statute and should not adopt a statutory construction that makes any part superfluous or meaningless, if that result can be avoided. Langlois v. East Baton Rouge Parish Sch. Bd., 99-2007 (La.5/16/00), 761 So.2d 504, 507; Boyter, 756 [So.2d] at 1129. Furthermore, -“the object of the court in construing a statute is to ascertain the legislative intent and, where a literal interpretation would produce absurd consequences, the letter must, give way to the spirit of the law and the statute construed so as to produce a reasonable result.” First Nat’l Bank of Boston v. Beckwith Mach. Co., 94-2065, p. 8 (La.2/20/95), 650 So.2d 1148, 1153 (quoting Smith v. Flournoy, 238 La. 432, 115 So.2d 809, 814 (1959)). The starting point for the interpretation of any statute is the language of the statute itself. Cat’s Meow, Inc. v. City of New Orleans, 98-0601, p. 15 (La.10/20/98), 720 So.2d 1186, 1198; Touchard v. Williams, 617 So.2d 885 (La.1993).
After considering La.R.S. 23:1102(0(1) in its entirety, it is my opinion that the Legislature intended to reimburse the employer in the event of an unauthorized settlement by awarding it reimbursement up to the amount of the settlement received. Although the third-party defendant is required to reimburse the employer or insurer, it is only required to do so “to the extent of the total' amount” of benefits paid to the employee. “Extent” is defined in the Merriam-Webster’s Collegiate Dictionary, (11 ed.2003), as “the range over which something extends.” Blacks Law Dictionary, (6th ed.1990), defines “extent” as the “[ajmount; scope; range; magnitude.” Thus, the language, “to the extent of the benefits paid,” implies that there is a range in the amount to be repaid extending up to the total amount paid on behalf of the employee.
|4I believe this interpretation is supported by the fact, as noted by the majority, that La.R.S. 23:1102(0(1) is penal in nature. Again,. I respectfully disagree with the majority’s position that to strictly construe the statute is to require Quality Fabricators to pay the entire amount of benefits expended by Eagle Pacific on Lavergne’s behalf. “Strict construction of a penal statute requires that it be interpreted AGAINST imposition of penal *1156 ty....” Albe v. Albe, 97-1042, p. 6 (La. App. 4 Cir. 11/19/97), 703 So.2d 756, 759, unit denied, 97-3048 (La.2/13/98), 709 So.2d 752. “When a law is strictly interpreted, it must not be extended beyond its obvious meaning.” Monteville v. Terrebonne Parish Consol. Gov’t, 567 So.2d 1097, 1100 (La.1990).
If a penalty statute is to be strictly construed against awarding a penalty, then it can be gainsaid that the amount of the penalty should be limited in its amount, scope, range, and magnitude. Further, it seems to me to be unfair and inequitable to require Quality Fabricators to pay five times more in penalty than the size of the settlement it confected with Lavergne.
In my opinion, the “obvious meaning” of La.R.S. 23:1102(0(1) is to allow the employee to obtain reimbursement from the employee’s settlement funds up to the amount of the settlement funds received in the compromise. Therefore, if the employee paid the employer, the amount of the reimbursement cannot exceed the amount of the settlement. If the employee does not pay the employer, strict construction of the statute demands that the third party should not have to pay the employer a sum of more than the amount, scope, range, or magnitude of the compromise as reimbursement.
| sAccordingly, I respectfully dissent from that portion of the majority opinion which requires Quality Fabricators to pay Eagle Pacific $124,905.90 and would find the award should be $25,000. I agree with the majority opinion in all other respects.