# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-658

STATE OF LOUISIANA

IN THE INTEREST OF

A.A., J.A., A.D., H.D., & J.D.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. JC-2014203
HONORABLE HERMAN C. CLAUSE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Shannon J. Gremillion, Judges.

**EXCEPTION OF NO CAUSE OF
ACTION DENIED. AFFIRMED.**

**Annette Fuller Roach**
**15ᵗʰ Judicial District Public Defenders Office**
**P. O. Box 3622**
**Lafayette, LA 70502**
**Telephone: (337) 436-2900**
**COUNSEL FOR:**
> **Appellant – L.D.**

**Jennifer O. Robinson**
**115 West Main Street – Suite 16**
**Lafayette, LA 70501**
**Telephone: (337) 237-0503**
**COUNSEL FOR:**
> **Appellee – A. A.**

**Tracey Davenport-McGraw**
**OCS – Indigent Defender**
**P. O. Box 931**
**Rayne, LA 70578**
**Telephone: (337) 257-4669**
**COUNSEL FOR:**
    **Appellee - F.D.**

**Paula Murphy**
**Acadiana Legal Services**
**1020 Surrey Street**
**Lafayette, LA 70501**
**Telephone: (337) 237-4320**
**COUNSEL FOR:**
    **Appellees – J.D., H.D., A.D., and J.A.**

**Jane Hogan**
**Public Defenders Office**
**600 Jefferson Street – Suite 902**
**Lafayette, LA 70501**
**Telepohone: (337) 889-5680**
**COUNSEL FOR:**
    **Appellee - L.H.**

**LaShonda G. Derouen**
**425 W. Vermilion Street**
**Lafayette, LA 70501**
**Telephone: (337) 237-4320**
**COUNSEL FOR:**
    **Appellee – F.D.**

**Laurene D. Theriot**
**Child Protection Investigator**
**825 Kaliste Saloom – Suite 104**
**Lafayette, LA 70508**
**FOR:**
    **Appellee – State of Louisiana, Department of Children & Family**
    **Services**

**Michelle Breaux**
**Assistant District Attorney – 15th Judicial District**
**P. O. Box 3306**
**Lafayette, LA 70502**
**Telephone: (337) 232-5170**
**COUNSEL FOR:**
    **Appellee – State of Louisiana**

**Casa Coordinator**
**c/o Casa of Acadiana**
**1819 W. Pinhook Road – #103**
**Lafayette, LA 70508**
**FOR:**
    **Appellee – Casa of Acadiana**

**THIBODEAUX, Chief Judge.**

The Department of Children and Family Services (DCFS) received a report alleging the sexual abuse of a minor from an unnamed source. The report involved a family with five minor children, where the father of three of the children allegedly engaged in various sexual acts with one of the other two minors. After receiving the allegations, DCFS instituted a temporary safety plan, which prohibited the father from having any contact with the children or being in the children's home during the course of the investigation. The following day, DCFS received information that the father was in the family home in violation of the safety plan. Upon discovering the violation, an instanter order was issued to remove the five children from the home and place them in foster care.

The State subsequently filed a petition to adjudicate the children in need of care. After hearing testimony from a DCFS investigator and a DCFS foster care employee regarding the violation of the safety plan and other out-of-court conversations with the children, the trial court held that the children should be adjudicated in need of care. L.D., the mother of all five children, now appeals this judgment, arguing that the trial court improperly relied on inadmissible hearsay evidence and that there was insufficient evidence to support the adjudication. L.D. also filed a peremptory exception of no cause of action, contending that the State's petition failed to state sufficient facts to support a claim. For the following reasons, we deny L.D.'s peremptory exception of no cause of action and affirm the judgment of the trial court.

I.

**ISSUES**

We shall consider:

(1) whether the State's petition to adjudicate the children in need of care states a cause of action;

(2) whether the trial court improperly relied on evidence that constitutes hearsay at the adjudication hearing; and

(3) whether the trial court erred in adjudicating the children in need of care.

II.

## FACTS AND PROCEDURAL HISTORY

On March 10, 2014, DCFS received a report of alleged sexual abuse of a child from an unnamed source. The alleged abuse stemmed from a family with five minor children (A.A., who is fourteen-years old; J.A., who is twelve-years old; A.D, who is ten-years old; H.D., who is eight-years old; and J.D., who is six-years old). Specifically, A.D. told the unnamed source that her father, F.D.[1], engaged in various sexual acts with her older half-sister, A.A. After receiving the report, DCFS spoke with the family and instituted a temporary safety plan. The plan prohibited F.D. from having any contact with the children or being in the children's home during the course of the investigation. The following day, DCFS received information that F.D. was in the family home in violation of the safety plan. L.D. allowed F.D. back into the home because she took A.A. to have a physical examination where it was determined that there was no evidence of sexual intercourse. Upon discovering the violation of the safety plan, an instanter order was issued to remove the five children from the home and place them in foster care.

On April 15, 2014, the State filed a petition to adjudicate the children in need of care. At the adjudication hearing, the State did not proffer any physical evidence, but it introduced two DCFS employees as witnesses.

---

[1] F.D. is the father of A.D., H.D., and J.D.

2

The first witness, Laurene Theriot, a DCFS investigator, testified to the violation of the safety plan and the subsequent removal of the children from the home, which DCFS relied upon to confirm the allegation of neglect by lack of adequate supervision.[2] She further testified that while DCFS had not confirmed the sexual abuse allegations, it had confirmed allegations of tying and confinement of the child, J.A. Specifically, Ms. Theriot stated that as the children were preparing to leave, she noticed J.A. pack a straitjacket when A.A. intervened and told J.A. that he would not need it. Ms. Theriot did not know at the time what it was, but she testified that A.A. later told her that it was a straitjacket to handle J.A., who had special needs and was difficult to control. Ms. Theriot testified that forensic interviews with the other children confirmed the existence of the straitjacket.

The State's second witness, Ronald J. Nichols, a DCFS employee in the foster care division, testified to discussions he had with the children. In particular, he stated that in talking with A.A., she disclosed engaging in various sexual acts with F.D. Mr. Nichols further testified that A.A. told him that her parents bought the straitjacket in an adult store along with pornography. Mr. Nichols also stated that he spoke with J.A., who indicated that the straitjacket existed, and A.D., who said that F.D. engaged in inappropriate sexual behavior with her. Mr. Nichols also testified that he heard from counselors and foster parents that J.A. exhibited behavior that indicated exposure to sexually explicit acts, including reports of touching his teachers inappropriately.

At the conclusion of the hearing, the trial court adjudicated the children in need of care given the violations of the safety plan and the evidence of tying and restraint via the straitjacket. L.D. now appeals this judgment, arguing

---

[2]Ms. Theriot did acknowledge that the neglect by lack of adequate supervision allegation involved more than just the safety plan violation. However, in regards to this allegation, no other facts were validated at the time of the adjudication hearing.

that the trial court improperly relied on inadmissible references to forensic interviews and hearsay evidence.[3]  L.D. further asserts that there was insufficient evidence to support the adjudication.  L.D. also filed with this court a peremptory exception of no cause of action, contending that the State's petition failed to state sufficient facts to support a claim.

## III.

## <u>STANDARD OF REVIEW</u>

Louisiana Code of Civil Procedure Article 2163 states that "[t]he appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record."  In considering the peremptory exception of no cause of action, "[n]o evidence may be introduced to support or controvert an exception[.]"  *Gaudet v. Jefferson Parish*, 12-707, p. 4 (La.App. 5 Cir. 3/27/13), 116 So.3d 691, 693.  Rather, "the court reviews the petition and accepts the well-pleaded allegations of fact as true."  *Id.*

In regards to admission of evidence, the trial court's decision to include or exclude evidence will not be overturned absent a clear abuse of discretion.  *Lamson Petroleum Corp. v. Hallwood Petroleum, Inc.*, 04-1038 (La.App. 3 Cir. 12/8/04), 890 So.2d 684.  As for whether the evidence was sufficient to support the adjudication, a juvenile court's findings of fact are generally subject to a manifest error standard of review.  *State in the Interest of P.J.*, 47,550 (La.App. 2 Cir. 9/12/12), 104 So.3d 517.  However, if the appellate court finds that evidence was improperly admitted, it may conduct a de novo review of the record only if the improperly admitted evidence prevents the

---

[3]There were continuous general objections to the testimony of both DCFS witnesses on the grounds of hearsay and improper references to forensic interviews at the adjudication hearing.  As such, the appeals of these issues were properly preserved.  *See Taunton v. Cane Air, Inc.*, 405 So.2d 624 (La.App. 3 Cir. 1981).

factfinder from making a fair and impartial determination of a disputed fact. *Godchaux v. Peerless Ins. Co.*, 13-1083 (La.App. 3 Cir. 6/4/14), 140 So.3d 817.

IV.

## LAW AND DISCUSSION

### Peremptory Exception of No Cause of Action

L.D. filed an exception of no cause of action simultaneously with her appellate brief on June 26, 2014. As this peremptory exception was submitted prior to the submission of the case for decision, it is properly before this court and subject to our review.

"The purpose of the peremptory exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition." *Veroline v. Priority One EMS*, 09-1040, p. 4 (La. 10/9/09), 18 So.3d 1273, 1275. L.D. contends that the State's petition failed to allege sufficient facts to support a claim for adjudicating the children in need of care in accordance with La.Ch.Code art. 606(A). We disagree.

Louisiana Children's Code Article 634(A)(3) requires that a petition state "[f]acts which show that the child is a child in need of care, including the acts or omissions of either parent which caused or contributed to the child's condition." Here, the State's petition lists the following allegations and facts to support its claim for adjudication:

> ALLEGATION: NEGLECT, SPECIFICALLY, ON 3/10/14 THE AGENCY RECEIVED A REPORT STATING THAT A YOUNGER CHILD IN THE HOME WAS REPORTING SEEING HER STEP-FATHER'S PENIS WHILE HE WAS ON TOP OF THE ELDEST CHILD ON THE SOFA IN THE HOME. ON 3/10/14, DURING THE INITIAL INVESTIGATION, THE AGENCY PUT A SAFETY PLAN FOR THE ALLEGED CARETAKER/PERPETRATOR, [F.D.], TO LEAVE THE HOME UNTIL THE AGENCY CAN OBTAIN FORENSIC INTERVIEWS OF THE CHILD VICTIM AND THE CHILD WITNESS. ON 3/11/14, THE AGENCY VERIFIED THAT [L.D. AND F.D.] VIOLATED

THE AGENCY SAFETY PLAN BY LETTING [F.D.] RETURN TO THE HOME AFTER [L.D.] BROUGHT THE CHILD VICTIM TO THE E/R FOR AN EXAM AND WAS TOLD THAT THE CHILD DID NOT APPEAR TO BE SEXUALLY ABUSED. THE AGENCY IS CONTINUING TO OBTAIN INFORMATION REGARDING ADDED ALLEGATIONS OF ABUSE/TYING AND CONFINEMENT AND NEGLECT/DEPENDENCY/MENTAL HEALTH ON THE MOTHER, [L.D.] AND HER DIMINSIHED PROTECTIVE CAPACITY.

While the petition states that allegations of tying and confinement as well as dependency on the mother are being investigated, it fails to list any specific facts, acts, or omissions to support these allegations. As such, the petition is insufficient in regards to these allegations under La.Ch.Code art. 634(A)(3). The petition does, however, reference neglect, supported by the alleged facts that L.D. and F.D. violated the safety plan by allowing F.D. to return to the family home and be in contact with the children. Considering neglect is a valid ground for adjudication under La.Ch.Code art. 606(A)(2), the pertinent question in our review of this peremptory exception of no cause of action becomes whether the alleged violation of the safety plan, if assumed to be true, constitutes neglect warranting the adjudication of the children in need of care. To answer this question, we must first address what constitutes neglect.

Neglect, as used in Louisiana Children's Code Title VI regarding children in need of care, is defined as:

> the refusal or unreasonable failure of a parent or caretaker to supply the child with necessary food, clothing, shelter, care, treatment, or counseling for any injury, illness, or condition of the child, as a result of which the child's physical, mental, or emotional health and safety is substantially threatened or impaired.

La.Ch.Code art. 603(18).[4] In reading this neglect provision, the clause "for any injury, illness, or condition of the child" potentially creates two interpretations of

---

[4]Louisiana Children's Code Article 603 was amended on June 9, 2014, by 2014 La. Acts No. 486, 51 (S.B. 290) to amend the definition of the Safety Plan. However, as this amendment is substantive in nature and went into effect after the trial court issued its judgment, it applies

the neglect provision. On the one hand, considering this illness clause directly follows the mandatory requirements of "food, clothing, shelter, care, treatment, or counseling," neglect could potentially be interpreted narrowly as a failure to provide these mandatory requirements only in situations involving an injury, illness, or condition of the child. If interpreted this way, we would be forced to find the petition insufficient, as there are no alleged facts of actual injury to a child in the petition. On the other hand, the Code could be construed broadly, where failure to provide adequate care, irrespective of injury, is considered neglect, and the illness clause only serves to qualify the last-listed parental requirement of providing adequate counseling. Following this interpretation, the factual allegations of willfully failing to follow a DCFS safety plan could constitute neglect in the form of inadequate general care that substantially threatens the health of the child.

Given the ambiguity of the neglect provision, we must turn to the rules of codal and statutory interpretation in Louisiana. The Louisiana Supreme Court has provided valuable guidance in this realm:

> The rules of judicial interpretation of statutes are designed to ascertain and enforce the intent of the legislature in enacting the statute. *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 2000-1695 (La.6/29/01), 808 So.2d 294, citing *Stogner v. Stogner*, 98-3044 (La.7/7/99), 739 So.2d 762, 766; *State v. Piazza*, 596 So.2d 817, 819 (La.1992). The fundamental question in all cases of statutory construction is legislative intent and the reasons that prompted the legislature to enact the law. *Succession of Boyter*, 99-0761 (La.1/7/00), 756 So.2d 1122, 1128. When a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written, with no further inquiry made in search of the legislative intent. [La.Civ.Code.] art. 9; La. R.S. 1:4.
>
> The meaning and intent of a law is determined by considering the law in its entirety and all other laws concerning the same subject matter and construing the

---

prospectively only and is not applicable to this appeal. La.Civ.Code art. 6. As such, we reference the 2013 version of the Code for all definitions.

provision in a manner that is consistent with the express terms of the statute and with the obvious intent of the lawmaker in enacting it. *Boyter*, 756 So.2d at 1129; *Stogner*, 739 So.2d at 766. The statute must therefore be applied and interpreted in a manner that is logical and consistent with the presumed fair purpose and intention the legislature had in enacting it. *Boyter*, 756 So.2d at 1129. Courts should give effect to all parts of a statute and should not adopt a statutory construction that makes any part superfluous or meaningless, if that result can be avoided. *Sultana Corp. v. Jewelers Mut. Ins. Co.*, 03-0360 (La.12/3/03), 860 So.2d 1112; *Langlois v. East Baton Rouge Parish Sch. Bd.*, 99-2007 (La.5/16/00), 761 So.2d 504, 507; *Boyter*, 756 So.2d at 1129. Furthermore, "the object of the court in construing a statute is to ascertain the legislative intent and, where a literal interpretation would produce absurd consequences, the letter must give way to the spirit of the law and the statute construed so as to produce a reasonable result." *First Nat'l Bank of Boston v. Beckwith Mach. Co.*, 94-2065 (La.2/20/95), 650 So.2d 1148, 1153 (quoting *Smith v. Flournoy*, 238 La. 432, 115 So.2d 809, 814 (1959)).

*Champagne v. Am. Alternative Ins. Corp.*, 12-1697, pp. 5-6 (La. 3/19/13), 112 So.3d 179, 183-84.

In light of these rules, the neglect provision must be interpreted broadly with the "for any injury, illness, or condition" clause only qualifying the last listed requirement of counseling. While interpreting this clause as a qualifier for the other listed requirements is a plausible conclusion from a grammatical standpoint, it is completely illogical in light of the underlying spirit behind these laws of ensuring the safety and health of Louisiana's children. For example, the Code states that parents must provide food, clothing, and shelter. It is illogical to assume that a parent must only provide these basic necessities of life in times of injury or illness. We doubt that the legislature would be content with a parent leaving a child out in the rain with no clothing or food just because that child has a clean bill of health. As such, these listed requirements of food, clothing, shelter, care, and treatment must be considered generally applicable and not subject to any qualifying language.

8

In light of our interpretation of the neglect provision, we find that the alleged fact of willfully violating a DCFS safety plan during an ongoing investigation of sexual abuse with a minor constitutes neglect and is alone sufficient to support an adjudication of the children in need of care. This safety plan was put in place in light of very serious allegations of sexual abuse with a minor, A.A. Considering the heinous nature of such alleged acts, it is clear the plan was designed to protect the physical, mental, and emotional health of the children. Both L.D. and F.D. were aware of this temporary plan. While L.D. may have believed the plan was no longer necessary after the emergency room failed to find any physical evidence of sexual intercourse with A.A., this was not her call to make as the DCFS investigation was still ongoing and sexual abuse encompasses more than just the act of intercourse. If parents and caretakers are allowed to unilaterally interpret and violate DCFS safety plans on a personal whim or belief without accountability, then these plans serve no practical purpose. Such a policy would only serve to impair DCFS investigations and potentially put children in serious danger of further harm. As such, the willful refusal to follow a safety plan fits perfectly within the definition of neglect, as it amounts to a refusal to supply adequate general care, the result of which substantially threatens the health of the children. Considering the State's petition provided sufficient facts to support the allegation of neglect and the legal remedy of adjudicating the children in need of care, we deny L.D.'s peremptory exception of no cause of action.

### Admissibility and Sufficiency of the Evidence

L.D. contends that the trial court relied on impermissible references to forensic interviews outside of court as well as hearsay evidence in adjudicating the children in need of care. We agree.

9

Louisiana Children's Code Article 663(A) states that the rules of evidence applicable in civil proceedings also govern adjudication hearings. Under the Louisiana Code of Evidence, hearsay is defined as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La.Code Evid. art. 801(C). Given the unreliable nature of such evidence, hearsay is inadmissible at adjudication hearings unless it falls under one of the enumerated statutory exceptions found in La.Code Evid. arts. 803 and 804. *State ex rel. D.H.*, 04-2105 (La.App. 1 Cir. 2/11/05), 906 So.2d 554.

In his oral reasons, the trial judge stated that while the sexual abuse allegations were still under investigation, the violation of the safety plan and the tying and restraint with the straitjacket provided a sufficient basis for adjudicating the children in need of care. In regards to the tying and restraint allegations, the evidence presented at trial consisted of Ms. Theriot's testimony regarding her out of court conversation with A.A. as well as the forensic interviews with the other children. Mr. Nichols' testimony further consisted of discussions of out of court conversations with the children and counselors about the alleged sexual abuse, the existence of the straitjacket, and the erratic behavior of the children.

This evidence is all inadmissible hearsay as it amounts to out of court statements that do not fall within the enumerated statutory exceptions. While videotapes of the forensic interviews that allegedly confirmed the tying and restraint allegations could have been admitted into evidence to overcome the hearsay bar under La.Ch.Code art. 327 and La.R.S. 15:440.5, videotapes were never submitted and the requirements for admission were never met. Even though the trial judge stated that he admitted the evidence because it only showed the findings of the investigation, the trial judge relied on both the testimony and references to the forensic interviews for the truth of the matters asserted, as he

10

referenced the tying and restraint issues in his oral reasons for adjudicating the children in need of care. As the admission of this hearsay evidence amounted to legal error that interdicted the trial judge's fact-finding process, we shall conduct a de novo review of the remaining evidence to determine if there was a sufficient basis to adjudicate the children in need of care.

After striking as hearsay Mr. Nichols' entire testimony and Ms. Theriot's references to her discussions with the children and the forensic interviews, the only remaining evidence is Ms. Theriot's testimony regarding the violation of the safety plan. This testimony is unrefuted. As discussed above, the violation of a temporary safety plan alone constitutes neglect and forms a sufficient basis to adjudicate the children in need of care. As such, we affirm the judgment of the trial court.

## V.

## <u>CONCLUSION</u>

For the foregoing reasons, we deny the appellant's peremptory exception of no cause of action and affirm the judgment of the trial court.

**EXCEPTION OF NO CAUSE OF ACTION DENIED. AFFIRMED.**