# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

# JAC 17-429


# STATE OF LOUISIANA IN THE INTEREST OF L.F.B.


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 27496
HONORABLE LILYNN A. CUTRER, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***


# JOHN E. CONERY
# JUDGE

**\*\*\*\*\*\*\*\*\*\***


Court composed of John D. Saunders, John E. Conery, and D. Kent Savoie, Judges.


# REVERSED WITH INSTRUCTIONS and REMANDED.

**Tara B. Hawkins**
**Attorney at Law**
**716 Hodges Street**
**P.O. Box 3756 (70602)**
**Lake Charles, Louisiana  70601**
**(337) 313-4090**
**COUNSEL FOR APPELLANTS:**
    **G.B and Ri.B. (Maternal Grandparents)**

**Thomas W. Saunders, Jr.**
**1919 Kirkman Street**
**Lake Charles, Louisiana  70601**
**(337)  491-2067 – Office**
**(337) 491-2654 - Fax**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana, Department of Children & Family Services**

**Amy E. McGray**
**Mental Health Advocacy Service/Child Advocacy Program**
**1 Lakeshore Drive, Suite 1585**
**Lake Charles, Louisiana  70601**
**(337)  491-2461- Office**
**(337) 491-2464 - Fax**
**COUNSEL FOR OTHER APPELLEE:**
    **L.F.B. (child)**

**CONERY, Judge.**

In this "child in need of care" (CINC) case, the maternal grandparents G.B. and R.B. (the grandparents) sought to intervene in a case planning hearing concerning placement of their granddaughter[1]. The trial court set their intervention for contradictory hearing. At the hearing, the grandparents had the burden of showing 1) that they were interested persons; and 2) that their intervention would "facilitate the permanent placement of the child and [would] insure that the best interests of the child are protected." La.Ch.Code art. 697(A). At the hearing, the State, through the Department of Children and Family Services (DCFS), stipulated that the grandparents were interested parties. But after the close of evidence, the trial court found the grandparents had not met their burden of proving their intervention would facilitate their granddaughter's permanent placement and be in her best interests, and denied their petition to intervene. The grandparents now appeal the trial court's January 30, 2017 judgment denying their petition to intervene.

For the following reasons, we reverse and remand the matter to the trial court with instructions that G.B. and R.B. are allowed to intervene and are to be served with notice of a new hearing to be conducted in accordance with the views expressed herein.

---

[1] The maternal grandparents filed a petition for custody, seeking an ex-parte order granting them temporary care, custody, and control of the minor child, and a hearing on why they should not be awarded the permanent care, custody, and control of the minor child. In its September 26, 2016 order, the trial court scratched through and penned in language so the ultimate order commanded the "State of Louisiana, Department of Children and Family Services to appear and show cause on the 8 day of December, 2016 at 10:00 o'clock a.m., why Petitioners should not be permitted to intervene to facilitate the permanent care, custody, and control of the minor child." The record shows the grandparents' petition for custody/petition to intervene and accompanying order was filed on September 29, 2016, and the trial court's order is dated September 26, 2016. The record does not explain this discrepancy.

## FACTS AND PROCEDURAL HISTORY

A single issue is presented for our review. The grandparents ask us to decide "[w]hether, pursuant to La.Ch.Code art. 697, the grandparents were interested parties who established good cause for their intervention in the DCFS case review proceedings for permanent placement of their grandchild." This case concerns L.F.B., who was five in April 2015 when DCFS assumed legal custody of L.F.B. from her mother. At that time, the location of L.F.B.'s mother was unknown, the identity and location of her father was unknown, and she was living with her maternal grandparents, G.B. and R.B., who are the appellants herein[2]. DCFS maintained L.F.B.'s physical placement with the grandparents. On April 13, 2015, the trial court ordered continued custody of L.F.B. by the State of Louisiana, through DCFS. L.F.B. remained physically placed with the grandparents by DCFS and with approval of the court from the time the State assumed custody until March 17, 2016.

At the continued custody hearing on April 13, 2015, the court found good cause to continue custody of L.F.B. with DCFS. The grandparents were present at the hearing. At that time, the permanent placement plan for L.F.B. was reunification with her parent(s).

At the May 7, 2015 adjudication hearing, L.F.B. was adjudicated a child in need of care. The grandparents were present at the hearing. Custody of L.F.B. was maintained with DCFS. Placement of L.F.B. remained with the grandparents. The May 1, 2015 case plan, which the court adopted as part of its order, stated: "[L.F.B.] is placed in the non-certified home of her maternal grandparents, G.B. and R.B. in

---

[2] L.F.B.'s father is unknown. Two men purportedly could be her father. Accordingly, any reference to her father, herein, refers to R.Y. and C.W. collectively unless specifically indicated otherwise.

Calcasieu Parish. It is the least restrictive, most family like, safe, and most appropriate setting. It is in close proximity to her mother."

This case was reviewed again on August 24, 2015, and the court found that reunification with her parents was no longer in L.F.B.'s best interest. It ordered DCFS to "re-staff the case and file Petition for Termination of Parental Rights." The grandparents were present at the August 24, 2015 hearing. The court maintained custody with DCFS and placement with the grandparents. In an August 11, 2015 court report, the current placement of L.F.B. was described as being "in the home of her maternal grandparents, [G. and R.B]. She resided in the home prior to entering State's custody. She has adjusted well in the home."

The next case review hearing took place on March 10, 2016. The grandparents were present at that hearing. In rendering its case review judgment on March 10, 2016, the court considered a February 22, 2016 case report and a case plan filed on March 10, 2016. The case report indicated the current placement of L.F.B. was "in the home of her maternal grandparents, [G. and R.B.]. She resided in the home prior to entering State's custody. She has adjusted well in the home." It further indicated that the DCFS worker had left her business card for G. and R.B. to give to one of L.F.B.'s potential fathers "when he comes to visit [L.F.B.] again."[3] It also indicated that the grandparents had completed the required classes and were in the final steps of the certification process for adoption of L.F.B.

The March 10, 2016 case plan described the placement of L.F.B. as "in the non-certified home of her maternal grandparents, [G. and R.B.] in Calcasieu Parish.

---

[3] After L.F.B. was removed from their home, at the grandparents' eventual hearing on their petition to intervene, the caseworker testified that she learned that R.Y., the potential father, had taken L.F.B. for a day visit. The caseworker was trying to find R.Y. so that he could be tested for paternity and wanted the grandparents to help locate R.Y.

It is the least restrictive, most family like, safe, and most appropriate setting. It is in close proximity to her mother." It also indicated that G. and R.B. were "committed to adopt" and their home study had been completed. When asked about how the case plan maintained permanent connections, it stated that L.F.B. was "placed with her grandparents", was visiting monthly with her younger half-brother, and that she "has friends in the neighborhood that come and play with her on a regular basis." It further stated that all foster caretakers were mailed written notification of the date, time, place of court hearings, and their right to attend and be heard 14 days before the court hearings. The court found that the case plan was consistent with the best interest of L.F.B., made it part of the court's orders, and ordered compliance therewith.

Seven days after the March 10, 2016 case review hearing, DCFS arrived at the grandparents' home and announced they were removing L.F.B. from their care. Again, at the grandparents' eventual hearing in January 2017, the caseworker testified that when she arrived at the grandparents' home for a scheduled routine visit on March 16, 2016, she found that R.Y., the potential father, was there ready to pick up the child for an unauthorized visit. The caseworker became concerned that the grandparents were not cooperating, and since R.Y. had no permission to visit from DCFS who had legal custody of the child, concern over the child's safety prompted her to return the next day with her supervisor and remove L.F.B. from her grandparents' home without notice and a hearing. No alternatives or warnings were given. Instead, DCFS gave the grandparents two hours to pack L.F.B.'s belongings and tell her goodbye. At the end of those two hours, DCFS physically removed L.F.B. from her grandparents with no notice of a right to a

hearing and no visitation. The record shows that both the child and the grandparents were extremely upset and crying.

L.F.B. was then placed in the home of complete strangers, a non-relative foster home in Westlake, Louisiana. No expedited hearing was sought and no notice was given to the grandparents of the June 2, 2016 case review hearing. At that hearing, the trial court considered an April 5, 2016 case plan and a May 23, 2016 case report submitted by DCFS. The grandparents were not present at the June 2, 2016 hearing, and there is nothing in the minutes to show that they were served or notified of the hearing. Up until this point, the grandparents were family members in whose care the minor had been placed by several court orders, the last being the order of March 10, 2016, which was still lawfully in effect. They should have been served with notice of the June 2, 2016 hearing date, time, and location and of their rights to attend and be heard. *See* La.Ch.Code arts. 623 and 695. In fact, L.F.B. had actually been residing with her grandparents almost since birth.

The record reflects that at the June 2, 2017 hearing, the trial court was advised of the change in L.F.B.'s placement for the first time. There is nothing in the record to show that the trial court was informed as to why the grandparents were not present or why the child had been removed from their care. In its judgment, the trial court maintained custody with DCFS and placement with a non-relative foster family in Westlake. It also issued an order prohibiting L.F.B. from being placed out of state without permission from the court. Again, nothing was mentioned about notice to the grandparents or arranging for grandparent visitation. Apparently, the child's attorney also did not make known to the court the abrupt actions of DCFS in removing her from the grandparents' home and did not present any evidence reflecting the feelings of the child or the effect her abrupt removal

from the grandparents' home may have had on the child. There had been no visitation or even contact with the grandparents since March 17, 2016.

L.F.B. lived with the Westlake non-relative foster family from March 17, 2016 until approximately September 2, 2016, when her attorney filed a motion seeking expedited review of her placement in accordance with La.Ch.Code art. 692(B). In support thereof, counsel for L.F.B. stated "the current foster parents of the minor child are no longer able to maintain their certification as foster parents in the State of Louisiana, due to pending criminal issues." DCFS "informed [counsel for L.F.B.] that she would be removed from this placement, but did not give a timeframe for the removal." Counsel for L.F.B. also suggested that placement in Texas with a couple who may be her aunt and uncle (depending on who is her father) would be in L.F.B.'s best interest. Again, no mention was made by the child's attorney of placement or visitation with L.F.B.'s grandparents, with whom she had lived most of her life, and no evidence as to the child's feelings or emotional state is in the record.

The expedited motion to change placement filed by the child's attorney was set for hearing on September 15, 2016. There is nothing in the record to show that the grandparents were served or notified in any way of this "expedited hearing." In fact, the record is void of any judgment or order addressing the issues presented in the motion for expedited review. However, the minutes reflect that after a hearing, the trial court allowed L.F.B. to be placed in the out of state home of a couple in

Texas, alleged to be the sister and brother-in-law of R.Y.[4], one of the men who *may* have been L.F.B.'s father.

On or about September 29, 2016, after learning L.F.B. was now living in Texas, the grandparents were able to hire counsel and filed a petition for custody, seeking an ex-parte order granting them temporary care, custody, and control of L.F.B. and requesting a hearing on why they should not be awarded the permanent care, custody, and control of L.F.B. In its September 26, 2016 order, the trial court scratched through the temporary custody order and penned in language commanding the "State of Louisiana, Department of Children and Family Services to appear and show cause on the 8[th] day of December, 2016[,] at 10:00 o'clock a.m., why Petitioners should not be permitted to intervene to facilitate the permanent care, custody, and control of the minor child." The December 8, 2016 hearing was continued to January 17, 2017, in open court on an oral motion by DCFS for reasons not in the record. By this time, L.F.B. had been removed from her grandparents' home for ten (10) months with no visitation except for a twenty (20) minute "hello" at the office of DCFS approximately two and one-half (2.5) months before the January 17, 2017 hearing.

At trial on January 17, 2017, three people testified: a DCFS worker, and the grandparents, G.B., and R.B. The DCFS worker's trial testimony indicated that there were five or six issues and events culminating in its decision to suddenly and abruptly remove L.F.B. from G. and R.B.'s home on March 17, 2016, without notice or an expedited hearing request. These were: additional documentation was needed by DCFS as to R.B.'s divorce some forty (40) years prior; the lack of a

---

[4] In the motion for expedited review, Mr. and Mrs. Wright are alleged to be the maternal aunt and uncle of L.F.B.; however, it is clear from the record and particularly the transcript that they are actually the sister and brother-in-law of R.Y.

prescription for methadone that was requested and not produced; R.B.'s consumption of a beer out of the can in front of the child (DCFS did not ask her not to drink around the child, only that she not drink from the can around the child. If she put it in a cup, it would be okay); G.B. and R.B.'s collective failure to notify DCFS when R.Y. (one of L.F.B.'s alleged fathers) came to their house; and failure to notify DCFS that L.F.B was playing in the front yard and RY showed up. R.Y. told L.F.B. that her grandparents had given her permission to go with him so she hopped in the car and he left. When the grandparents saw what was happening, they got in their car and chased him down the street to get L.F.B back. The entire event took about twenty (20) minutes. DCFS was also concerned that the grandparents may have allowed unsupervised visits between R.Y. and L.F.B. in the past and lied to the DCFS worker about knowledge of R.Y.'s residence location.

At trial, G.B. and R.B. testified that they did not know why L.F.B. was removed from their home. They were not given advance notice or a warning that L.F.B. would be removed. They further testified that they had only seen L.F.B. once at the DCFS office at the end of November for approximately twenty (20) minutes since her abrupt removal from their home. The grandparents asserted that they did not know where L.F.B.'s home was, what it was like, and whether she was happy. They further testified that they loved her, were worried about her, and only wanted what was best for her. They believed that living in their home would be best for L.F.B.

There is nothing in the record to show whether the grandparents were specifically notified by DCFS that they were supposed to report any contact between L.F.B. and R.Y. to D.C.F.S. Equally unclear in the record is whether the grandparents knew L.F.B. was not supposed to have contact with R.Y. without one

of them supervising the visits.[5] R.Y.'s parental rights had not yet been terminated as of March 17, 2016, the date L.F.B. was removed from her grandparents' home.

At the January 17, 2017 hearing, neither DCFS nor the child's attorney presented evidence about the suitability of L.F.B.'s current placement in Texas. Again, the child's attorney did not attempt to present the child's testimony or even relay her current mental state, emotional condition, and wishes to the trial court. The record does not reflect that a Court Appointed Special Advocate (CASA) worker was requested to be appointed, and no mental health evaluation was requested by either DCFS or the child's attorney.

DCFS argued that the grandparents' petition should be denied because they had not provided any testimony that their intervention would "facilitate the permanent placement of the child and insure the best interests of the child are protected as required pursuant to Louisiana Children's Code Article 697." The trial court's interpretation of "permanent placement" was the same as DCFS's. Apparently the focus was on whether the grandparents had failed to show that the child's **current** placement in Texas was detrimental to the child's well-being, and **not** on what eventual "permanent placement" might be in her best interest. There were no judicial findings as to what was in the child's best interest, or how the grandparents' intervention might facilitate a permanent placement that was in the child's long term best interest. At the conclusion of trial, the trial court summarily denied the grandparents' petition to intervene, stating:

---

[5] There is no court order in the record that prohibited L.F.B. from having contact with her parents while she lived with her grandparents. In fact, the October 2015 case plan, which was adopted by the trial court in its March 10, 2016 judgment, specifically provided a visitation plan "for frequent and quality parent-child interaction." The contact was only provided for the mom, no mention was made of either putative father and while no visitation was granted to either, there was no specific prohibition from doing so in the case plan.

THE COURT: Okay, the intervention, or to intervene, requires that there be good cause and that it be to facilitate the permanent placement of the child, and to ensure the best interest of the child is protected. And, with regard to the removal and going back to all that, when the child is in State's custody the Court can't tell them where to place them. So, whether something should not have happened or the child shouldn't have been removed at the time, I mean, I can't redo all of that, anyway, and they can do that without the Court.

But I will say that I just don't see where the burden was met today. I don't see any reason that they – the permanent plan for the child is clearly adoption, and she is in the placement of adoptive parents and has been. And, the Court has not received any information of anything negative about that, only positive. I don't find that there's any information or anything that can be offered that will facilitate that occurring, or that would change what was best for the child.

I mean, I will say I think, you know, if things are done appropriately and for the protection of the child, that continuing, you know, a relationship with grandparents in some way might be beneficial to the child. I don't know about – I can't speak, exactly, because I don't have the child with me. I do think that contact with family is important if it can be done appropriately. There's concerns about some things that were said at the last one. So, I'm really – I can't say as to whether that's appropriate but I do think that could be a benefit to the child, if appropriate.

But as to intervene and to try to establish that they should be given custody, I don't really feel that that's what intervention is for. I agree with the case law that is cited by the State and that the purpose is not to present evidence or provide evidence that would show that they are the proper parties for placement of the child or they want to adopt the child. I think it's only to do with what the code said, which is to facilitate the plan that's in place. And, I don't see where they have proven anything that would facilitate that. And so, the Court is not going to allow the intervention. So, that is my ruling, and I guess if the State will prepare an order on that.

On January 30, 2017, the trial court signed a judgment memorializing its January 17, 2017 ruling that G.B. and R.B. failed to prove that their intervention would "facilitate the permanent placement of the child and insure the best interests of the child are protected as required pursuant to Louisiana Children's Code Article 697." It is from this judgment that G.B. and R.B. appeal.

10

## ASSIGNMENT OF ERROR

In assigning error, the grandparents assert "[t]he trial court committed legal error in its application of the standard to be applied to determine whether a party has made the requisite showing of standing, as interested parties, and of good cause to intervene in the agency's case review proceedings."

## STANDARD OF REVIEW

In *Evans v. Lungrin*, 97-541 pp. 6-7 (La. 2/6/98), 708 So.2d 731, 735, our supreme court articulated the following as the standard of review:

> It is well-settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). However, where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record and determine a preponderance of the evidence. *Ferrell v. Fireman's Fund Ins. Co.,* 94-1252 (La.2/20/95); 650 So.2d 742, 747, *rev'd in part, on other grounds,* 96-3028 (La.7/1/97); 696 So.2d 569, *reh'g denied,* 96-3028 (La.9/19/97); 698 So.2d 1388. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. *See Lasha v. Olin Corp.,* 625 So.2d 1002, 1006 (La.1993). Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. *See Lasha,* 625 So.2d at 1006. When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts *de novo. Lasha,* 625 So.2d at 1006.

## LAW AND DISCUSSION

The purpose of Louisiana's "child in need of care" statutes is "to protect children whose physical or mental health and welfare is substantially at risk of harm by physical abuse, neglect, or exploitation . . . by providing . . . for the resolution of child in need of care proceedings in the courts. . . . [t]he health, safety, and best interest of the child shall be the paramount concern in all

proceedings[.]" La.Ch.Code art. 601.

For a child to be considered a "child in need of care", one of seven grounds must be met, including "[t]he child is a victim of neglect." La.Ch.Code art. 606(A)(2). When DCFS receives reports of abuse or neglect, it first assigns a level of risk to the child based on the information received in the report. La.Ch.Code art. 612(A)(1). DCFS then conducts an investigation or assessment. *See* La.Ch.Code art. 612(A)(2-4). After investigating, DCFS must decide whether the report was valid, whether it was justified, and whether the child is in need of care. La.Ch.C. art. 615(B). If "[t]he child appears to be a child in need of care and his [or her] immediate removal is necessary for his [or her] protection from further abuse or neglect," DCFS will apply for an instanter removal order "to place the child in the custody of a suitable relative or other suitable individual capable of protecting the health and safety of the child, or the state . . . and shall notify the district attorney as soon as possible." La.Ch.Code art. 615(B)(1). DCFS then "file[s] a verified complaint alleging facts showing that there are reasonable grounds to believe that the child is in need of care and that emergency removal or the implementation of a safety plan is necessary to secure the child's protection." La.Ch.Code art. 619. Filing the complaint divests the parent of authority to place the child with a friend or relative. La.Ch.Code art. 619(A)(2).

If removal is requested by DCFS, it is incumbent on the trial court to determine whether reasonable efforts were made to prevent the child's removal and whether emergency removal is necessary to secure the child's protection. La.Ch.Code art. 619(B) and (C)(1). In making these determinations, the child's health and safety are the court's paramount concern. La.Ch.Code art. 619(B).

If the court determines removal is the only way to safeguard the child, "the

court shall immediately issue a written instanter order directing that the child be placed in the provisional custody of a suitable relative or other suitable individual[.]" La.Ch.Code art. 619(C)(2).

> [A] child who appears to be a child in need of care and whose immediate removal is necessary for his [or her] protection from further abuse or neglect shall be placed, pending a continued custody hearing, in accordance with this priority:
> 1) **in the home of a suitable relative** who is of the age of majority and with whom the child has been living in a wholesome and stable environment if the relative is willing and able to continue to offer such environment for the child pending an adjudication hearing and if he agrees to the safety plan.

La.Ch.Code art. 622(B)(1). (emphasis added).

In this case, L.F.B. was properly removed from the custody of her mother, Re.B., due to verified complaints of maternal neglect and continued drug use by Re.B. L.F.B. was living with the grandparents at the time and Re.B.'s then whereabouts were unknown. There are no issues concerning whether the child was properly removed from the mother's custody. Since the child was initially allowed by the trial court and DCFS to continue to live in the home of her grandparents, where she had resided for most of her life, there are likewise no issues on appeal concerning the child's initial placement with the grandparents.

Once a child has been removed from his or her home, DCFS is obligated to "give **notice** of **any court hearing regarding the child** to his parents and other parties. It shall also give such notice regarding any child in foster care **to *any* foster parent, pre-adoptive parent, and relative providing care.**" La.Ch.Code art. 623(A). (emphasis added). "The notice shall state the date, time, and place of the hearing and inform the recipient of his right to attend and be heard." La.Ch.Code art. 623(B). The grandparents were obviously "relative[s] providing care" and entitled to notice.

"Within sixty days after a child enters the custody of a child care agency [(i.e. DCFS)], the custodian shall develop a case plan detailing the custodian's efforts toward achieving a permanent placement for the child." La.Ch.Code art. 673. The child's health and safety should be the paramount concern in crafting a case plan. *Id.*

When a child has been adjudicated a child in need of care, the trial court shall consider the child's health and safety and may do any of the following at the disposition hearing to ensure the child's health and safety are protected:

(1) Place the child in the custody of a parent or such other suitable person on such terms and conditions as deemed in the best interest of the child including but not limited to the issuance of a protective order pursuant to Article 618.

(2) Place the child in the custody of a private or public institution or agency.

(3) Commit a child found to have a mental illness to a public or private institution for persons with mental illness.

(4) Grant guardianship of the child to a nonparent.

(5) Make such other disposition or combination of the above dispositions as the court deems to be in the best interest of the child.

La.Ch.Code art. 681(A).

In rendering its judgment, the court "shall impose the least restrictive disposition of the alternatives enumerated in Article 681 which the court finds is consistent with the circumstances of the case, the health and safety of the child, and the best interest of society." La.Ch.Code art. 683(A).

> The court **shall** place the child in the **custody of a relative unless the court has made a specific finding that such placement is not in the best interest of the child**. The court shall give specific written reasons for its findings, which shall be made a part of the record of the proceeding.

La.Ch.Code art. 683(B). (emphasis added). The court's judgment should specify the nature and maximum duration of the disposition, the agency or person to whom the child is assigned and the responsibilities of any agencies or persons legally obligated to secure or provide services to the child, and any case-specific terms and conditions of the disposition. La.Ch.Code art. 684(A). Also, the court's written order shall either approve the case plan or provide specific reasons why "it finds the plan does not protect the health and safety of the child or is otherwise not in the best interest of the child." La.Ch.Code art. 684(B). "**If a child is to be or has been placed out-of-state, the court shall determine and enter findings on whether the placement is safe, appropriate, and in the best interest of the child.**" La.Ch.Code art. 684(C). (emphasis added). "A judgment of disposition shall remain in force" until a child turns eighteen, unless its terms indicate an earlier expiration date, "it is modified, or [] it is vacated." La.Ch.Code art. 686.

Any time custody of a child is removed from his or her parents and placed with DCFS, case review hearings will be conducted on a regular basis and in accordance with La.Ch.Code arts. 687, *et seq.* until the child receives a permanent placement as defined in La.Ch.Code art. 603. La.Ch.Code art. 687. "The custodial agency shall file a case review report with the court or, if appropriate, with the administrative review body ten days prior to every scheduled review hearing." La.Ch.Code art. 688. The case review report "shall review the status of the child" and address: "[t]he continuing necessity for and appropriateness of the placement", "[t]he extent of compliance with the case plan", "[t]he extent of progress which has been made toward alleviating or mitigating the causes necessitating placement in foster care", and a likely date for return of the child "to [her] home **or place[ment] for adoption**[.]" La.Ch.Code art. 690. (emphasis added).

L.F.B. was, in fact, placed in the home of the grandparents for adoption purposes and they were nearing the end of the adoption certification process, needing, for the most part, only a long-standing out of state divorce decree that G.B. was having difficulty obtaining.

Case review hearings will continue in six month intervals until the child is permanently placed, but either party or the court may move for an earlier hearing for good cause shown. La.Ch.Code art. 692. All parties must be given notice of the date, time, and location of each case review hearing and be advised of their opportunity to attend and participate. La.Ch.Code art. 693.

In addition to the notice requirements for parties, the Louisiana Children's Code also requires notice of case review hearings to be given to "any foster parent, pre-adoptive parent, or relative providing care for the child" informing them of their right to attend the case review hearing and be heard. La.Ch.Code art. 695. At case review hearings, the "court **shall solicit and consider information regarding the care and treatment of the child from any foster parent, pre-adoptive parent, or relative providing care for the child who appears at the hearing.**" La.Ch.Code art. 695(D) (emphasis added). In addition to the parties and entities who are given notice of the case review hearings per La.Ch.Code arts. 693-695, any other interested party may petition the court for permission to intervene in the case review hearing. The court may allow their intervention "[f]or good cause shown" if their intervention would "facilitate the permanent placement of the child and . . . insure that the best interests of the child are protected." La.Ch.Code art. 697. "All parties, foster parents, adoptive parents, and relatives providing care for the child . . . may be present at a case review hearing." La.Ch.Code art. 698. "The court or administrative review body shall consider all relevant evidence offered by

the parties and may limit the admissibility or weight of any evidence which it deems unreliable, cumulative, or unduly dilatory." La.Ch.Code art. 699. Similar to the disposition hearing, after receiving and weighing the evidence at a case review hearing, the court may either "approve the [case] plan as consistent with the health and safety of the child and order compliance by all parties" or it may find that the case plan is not appropriate and order revision by DCFS. La.Ch.Code art. 700. If a child has been removed from his parents' custody, the provisions set forth above "shall govern the subsequent review process until such time as the child achieves a permanent placement as defined in [La.Ch.Code art.] 603." La.Ch.Code art. 701. Permanent Placement is defined as: "(a) [r]eturn of the legal custody of a child to his parent(s)[;] (b) [p]lacement of the child with adoptive parents pursuant to a final decree of adoption[;] (c) [p]lacement of the child with a legal guardian." La.Ch.Code art. 603(22). In the instant case, there has been no permanent placement as yet.

There is nothing in the record to demonstrate that DCFS actually considered the impact the abrupt removal of the child from her grandparents may have had on this five (5) year old child, who had lived with her loving grandparents almost all of her young life. Likewise, nothing in the record supports the decision by DCFS to suddenly and abruptly remove L.F.B. from her grandparents' home with no notice and no opportunity for a hearing or consideration of additional family services to the grandparents. However, the record does support a finding that surely more compassion for the child and her grandparents could have been demonstrated and more emphasis could and **should have** been placed on efforts to maintain close and continuing contact between them. The State could have and likely should have provided counseling and family services for these grandparents

17

to help them overcome any shortcomings that may have existed at the time the child was abruptly removed from their care. A very important function of the mission of this state agency is to provide "family services." There was no evidence that the child was in eminent danger.

A case review judgment had been signed by the court on March 10, 2016, only seven days from the date of the child's removal on March 17, 2016, maintaining custody with the state and placing L.F.B. with her grandparents. The accompanying case plan of adoption by the grandparents was accepted and incorporated into the court's order. This judgment was still in effect on March 17, 2016, when DCFS workers suddenly and abruptly removed L.F.B. from her grandparents' home. A request to modify L.F.B.'s placement was not filed by DCFS, and accordingly, the trial court was unable to make its necessary findings to ensure that L.F.B.'s health and safety were maintained. Instead, DCFS essentially changed L.F.B.'s placement from her grandparents' home, where she had lived most of her life, to the home of complete strangers to L.F.B., whose foster care certification was ultimately revoked because of their alleged criminal activity.

It is not controverted that DCFS had legal custody and could legally remove the child. However, DCFS did this without notice to the grandparents, whom DCFS stipulated were "interested parties" within the meaning of the Louisiana Children's Code, and failed to provide the grandparents with an opportunity for a hearing. In fact, there was no hearing.

The March 10, 2016 judgment was still in place at the time of the next case review hearing on June 2, 2016. At that hearing, several things were different. First, L.F.B.'s grandparents were not notified or present at this hearing. They had not missed a single hearing since DCFS took custody of L.F.B. In addition, L.F.B.

was no longer living with her grandparents, despite the court's March 10, 2016 judgment maintaining her placement with them. The trial court's succinct case review judgment from June 2, 2016 vastly differed from the court's previous review judgments by completely changing L.F.B.'s placement from one with a relative to one with strangers. The grandparents were not served with notice, were not present, and were not heard. As foster parents and relatives providing care, at least according to the judgment in place at that time, they were entitled to receive notice of the hearing date, time, and location and of their right to attend and be heard.

Further, at the June 2, 2016 hearing, the trial court did not make specific findings that placement with her grandparents was not in L.F.B.'s best interest, nor were written reasons for its finding filed into the record in accordance with La.Ch.Code art. 683. A finding that placement with a relative is not in a child's best interest must occur before a child is placed with a non-relative. Louisiana Children's Code Article 683 makes it clear that a child **shall be placed in the custody of a relative** absent findings by the court that the familial placement would not be in the child's best interest. DCFS removed the child without a hearing and opportunity to be heard, and in conflict with La.Ch.Code art. 692. And then, at the first hearing after L.F.B. was abruptly removed from her grandparents' home, there is nothing in the record to show that DCFS offered evidence justifying this substantial change in placement. The trial court was, therefore, unable to conduct a proper hearing to determine whether changing L.F.B.'s placement was in her best interest, and approved a case plan placing her with strangers. The June 2, 2016 case plan provided no specific plans for visitation between L.F.B. and her grandparents, half-brother, or neighborhood friends mentioned in previous case

19

plans as proof of continuing healthy relationships.

By not properly serving the grandparents with notice of the June 2, 2016 hearing and by going forward without giving them a chance to be heard or to provide relevant information on L.F.B.'s placement, DCFS improperly submitted a case plan that excluded the grandparents entirely. Decisions on L.F.B.'s placement were apparently made solely on the recommendation of DCFS and without consideration of any other evidence. Perhaps after hearing from the grandparents, the trial court would still have found placement with the non-relatives was in L.F.B.'s best interest. This court does not know. But we do know that the grandparents were not given an opportunity to be heard. We are equally confounded that counsel for L.F.B. did not raise any of these issues either a) when they occurred or b) at the June 2, 2016 hearing. There was no request on behalf of the child for an "expedited review" filed by the child's attorney.

We note that in September 2016, counsel for L.F.B. did file a motion for emergency hearing to change L.F.B.'s temporary placement from the non-relative placement DCFS had improperly and without notice made on June 2, 2016. According to the minutes, a hearing occurred. There is no dispositional judgment in the record. The grounds for changing L.F.B.'s placement were because the couple with whom she was presently placed had lost their foster certification because of criminal activities. From the transcript of the eventual hearing on the grandparents' petition for intervention on January 17, 2017, we deduce that L.F.B. was then placed in Texas with the sister and brother-in-law of R.Y., one of L.F.B.'s two potential fathers. But, we find no evidence in the record to indicate that either DCFS or the child's attorney requested that the trial court consider the propriety of L.F.B.'s out of state placement. Again, no specific findings required

20

by La.Ch.Code art. 684(C) for an out of state placement were made on the record.

We find that from March 17, 2016 on, the procedures and laws relative to children in need of care cases were not followed, thus tainting the future actions taken and decisions made by DCFS and the trial court.

Finally, in late September 2016, the grandparents were able to hire counsel. They filed a petition for custody, which was changed by the trial court to a petition to intervene in L.F.B.'s upcoming case review hearing, asserting they were interested parties whose testimony would help facilitate L.F.B.'s permanent placement.

In its brief oral reasons for ruling at the conclusion of the grandparents' hearing on January 17, 2017, the trial court narrowly interpreted La.Ch.Code art. 697 as requiring an intervenor to prove their intervention would facilitate a child's **current** placement, rather than the child's **permanent** placement, and it failed to properly address L.F.B.'s best interest. Louisiana Children's Code Article 697 (emphasis added) provides:

> A. For good cause shown, the court or administrative review body may allow any interested person, agency, or organization to intervene in the case review proceedings to facilitate the permanent placement of the child and to insure **that the best interests of the child are protected**.
>
> B. Upon motion of a party and for good cause shown, the court or administrative review body may limit the nature and extent of intervenor's participation in the case review hearing.

Before a trial court can allow an "interested person" to intervene, it must find two things: first that they are an interested person; and second that there is good cause to allow them to intervene. Showing they have "good cause" is done by proving 1) their intervention would facilitate the **permanent** placement of the minor child; **and** 2) their intervention would help the court insure that the child's

21

best interests are protected.

## I. Interested persons

At trial, DCFS stipulated that the grandparents are interested persons. Indeed, we previously discussed the case plan was for the grandparents to adopt L.F.B. Therefore, we need not address whether the grandparents had standing to intervene in L.F.B.'s CINC case.

## II. Good Cause

### a. Facilitate Permanent Placement

In the instant case, our reading of the trial court's decision leads us to conclude that the trial court interpreted "facilitate the permanent placement" as "facilitate the current placement", and denied the grandparents' petition to intervene. Under the facts of this case, we find that this interpretation constituted legal error.

In this case, L.F.B.'s mother's parental rights were eventually terminated on April 1, 2016, but a final decree of adoption had not been issued for L.F.B. The goal of the March 10, 2016 case plan was, in fact, termination of parental rights and adoption by the grandparents. [6] Thus, the grandparents' burden at the intervention hearing was proving that their intervention would facilitate the placement of the child with *a* legal guardian. There is no provision requiring the intervenors to prove their intervention would facilitate only the child's current placement. If the statute were meant to be interpreted so narrowly, it would be impossible for anyone to ever intervene and present evidence that a child's present placement is not in that child's best interest, or to present evidence that a different

---

[6] The case plan was dated October 7, 2015, but was adopted and made judgment of the court on March 10, 2016.

placement would better serve the child's best interest. It would deprive relatives who are able to provide care for the child from presenting evidence that may affect the trial court's ultimate decision on the child's custody and/or placement. We recognize that DCFS had custody and could determine placement; but it must do so in accordance with a case plan approved by the trial court. The trial judge could order DCFS to change its case plan, as it had done earlier in the case, or remove custody from DCFS, appoint a guardian, or take such other lawful action as may be in the child's best interest.

The legislature clearly wanted the trial court to be equipped with as much relevant information and as many useful observations about the child and/or his or her placement as possible when it enacted the provisions of the Louisiana Children's Code we have discussed herein, and specifically La.Ch.Code art. 623.

Louisiana Children's Code Article 623(A) requires DCFS to "give notice **of any court hearing** regarding the child to his parents and other interested parties. It shall also give notice regarding any child in foster care to any foster parent, **pre-adoptive parent**, and **relative providing care**." (emphasis added). The grandparents fit squarely within that provision. Louisiana Children's Code Article 623(E) requires the court to "solicit and consider information regarding the care and treatment of the child from any foster parent, pre-adoptive parent, or relative providing care for the child who appears at the hearing." A "foster parent" is "an individual who provides residential foster care with the approval and under the supervision of the department for a child in its custody" as did the grandparents in this case. La.Ch.Code art. 603(15).

23

The grandparents sought to intervene in L.F.B.'s case review hearing after having been denied notice of the previous two hearings. The purpose of a case review hearing is to

> determin[e] the continuing necessity for and appropriateness of the child's placement, to determine the extent of compliance with the case plan, to determine the extent of progress which has been made toward alleviating or mitigating the causes necessitating placement, and to project a likely date by which the child may be permanently placed.

La.Ch.Code art. 603(5).

The rules of judicial interpretation of statutes are designed to ascertain and enforce the intent of the legislature in enacting the statute. *SWAT 24 Shreveport Bossier, Inc. v. Bond,* 2000-1695 (La. 6/29/01), 808 So.2d 294. The fundamental question in all cases of statutory construction is legislative intent and the consideration of the reasons the law was enacted. *State in the Interest of AA*, *J.A., A.D., H.D., & J.D.*, 14-658 (La.App. 3 Cir. 10/2/14), 148 So.3d 968, *writ granted, judgment rev'd*, 2014-2509 (La. 1/9/15), 156 So.3d 648. The intent of the legislature is clear that any relevant information that would contribute to L.F.B.'s *permanent placement*, including placement with relatives with whom the child once lived or with foster families, should have been considered by the trial court.

Facilitating permanent placement requires the court to weigh the options for a child and then choose the one that is in that particular child's best interest; that is, the option that provides for the child's needs—mental, physical, spiritual, educational, etc.—better than any other option. This determination is a factual one, and the trial court has great deference in making it.

But, most importantly, in this case we find that the abrupt change in L.F.B.'s placement without notice as required by La.Ch.Code art. 623 and without the trial

24

court receiving any information on the child's best interest from L.F.B.'s grandparents should not have been made in this case.

Although some of the behaviors by the grandparents noted by DCFS may have been inappropriate, there was no evidence in the record that their actions placed L.F.B. in danger of immediate or irreparable harm such that DCFS could not wait for an emergency hearing before removing L.F.B.

Likewise, this court finds that there is no evidence placed or sought to be placed in the record of the effect of DCFS's abrupt removal of L.F.B. on the child. The record fails to show that any efforts were made to interview the child to determine her mental and emotional state or how she was coping with the sudden and abrupt change in her long term placement with her grandparents. The record is also devoid of any findings as to what may have been in the child's best interest and why.

In determining whether to allow an intervention, the trial court must also consider whether the intervention will help the court insure the child's best interests are protected. The record shows that L.F.B. lived with the grandparents for most of her life and was placed with them by DCFS for nearly a year after the State obtained custody. It is clear that the grandparents, who wanted to adopt L.F.B., were participating in the foster-care certification process and were almost certified to adopt L.F.B. on March 10, 2016. The record is also clear that from the moment DCFS removed L.F.B. from the grandparents' home, the grandparents were essentially cut off from their grandchild and not included in or provided notice of any court proceedings, despite being the only two people who had known L.F.B. most of her life and had cared for her the longest of anyone.

There is no evidence that denying the grandparents' petition to intervene served L.F.B.'s best interest. Indeed, failing to give notice, and then denying the intervention, made pertinent information that could only be provided by the grandparents and the child unobtainable by the trial court. The supreme court observed that a child's best interest and welfare "may be irreparably damaged not only by a mistaken change in custody but also by the effects of an attempted or threatened change of custody on grounds that are less than imperative." *Bergeron v. Bergeron*, 492 So.2d 1193, 1200 (La.1986).

We find that under La.Ch.Code art. 623(A), the grandparents were entitled to notice that DCFS sought to modify its existing March 2016 case plan *before* L.F.B. was removed from their home. There certainly was no showing that an emergency existed requiring immediate removal. DCFS should have set the issues for expedited hearing before, or at the very least, shortly after removing L.F.B. from her grandparents' home. In addition, the trial court, at its June 2, 2016 case review hearing, should have requested either DCFS or the child's attorney to address the appropriateness of DCFS's removal actions, the child's present placement, and her mental and emotional well-being. All should have noted the lack of notice to the grandparents.

The factual situation in the instant case can be distinguished from that in *State in the Interest of T.M.*, 03-929 (La.App. 3 Cir. 3/24/04), 869 So.2d 339. In *T.M.*, grandparents petitioned for nullity of a judgment concerning their minor grandchild due to lack of notice of the hearing. The grandparents had previously, but were not then, providing care to T.M. pursuant to a judgment of the court. In that opinion, we noted "they no longer technically fit into a category of persons entitled to receive notice of hearings affecting the interest of T.M." *Id.* at 344.

26

However, in the instant case, at the time of removal *and* until rendition of the court's June 2, 2016 judgment, G.B. and R.B. were still technically "foster parents" and/or "relatives providing care" to L.F.B. pursuant to the trial court's March 10, 2016 judgment. The March 10, 2016 judgment was not modified, rescinded, or otherwise changed during that period of time. Accordingly, since L.F.B. had been placed with G.B. and R.B. in accordance with the March 10, 2016 judgm2ent, and prior judgments, and since that judgment was in full force and effect until June 2, 2016, we find that notice of the June 2, 2016 hearing and of the grandparents' right to appear and be heard was required. As the record is void of any service returns on G.B. or R.B. for the June 2, 2016 hearing, and considering DCFS's obligation as well as the court's obligation to give notice to G.B. and R.B., we find the trial court erroneously proceeded with the case review hearing on June 2, 2016.

The specific judgment giving rise to this appeal stems from the trial court's January 17, 2017 denial of G.B. and R.B.'s petition to intervene. We reverse that judgment, order that the grandparents are allowed to intervene, and remand the case to the trial court for an appropriate hearing with proper notice to G.B. and R.B.

We note that at the time of the January 17, 2017 hearing on the grandparents' intervention, L.F.B. had not yet been permanently placed. She had been provisionally placed by DCFS with a couple in Texas who allegedly have familial ties with L.F.B. It is our understanding from the record that DCFS's ultimate goal now is for the Texas couple to adopt L.F.B. However, the adoption has not yet occurred. DCFS still has custody of L.F.B. and L.F.B.'s permanent placement must not be reviewed until full notice and opportunity to be heard is afforded to G.B. and R.B.

We also note that the grandparents initially sought permanent custody in this child in need of care proceedings. The trial court correctly, at least at this stage of the proceedings, converted their petition for custody to a motion to intervene in the CINC case. Under the law, the grandparents may file a civil custody proceeding only following conclusion or dismissal by the trial court of this CINC proceeding. *See* La.Ch.Code art. 308(B): "if [the department of family and child services] has obtained an instanter order from the juvenile court, . . . the juvenile court shall have jurisdiction to resolve the case as a child in need of care proceeding pursuant to the provisions of Title VI." *See also* comment b to La.Ch.Code art. 308(B):

> Under current law, . . . the juvenile courts exercise exclusive jurisdiction over child in need of care proceedings. In the event that a juvenile court order has issued, the district court should stay its hand and decline to issue any further orders affecting the child's custody until the juvenile court no longer exercises its jurisdiction pursuant to Article 313. The overriding purpose of this paragraph is to minimize the possibility of the issuance of conflicting orders by district, family and juvenile courts and to conserve judicial time and resources.

Louisiana Children's Code Article 313(A) specifies:

> [a] court exercising juvenile jurisdiction no longer exercises such jurisdiction in any proceeding authorized by this Code upon:
>
> (1) Declination of jurisdiction.
>
> (2) Transfer of the proceeding.
>
> (3) Expiration or satisfaction of an informal adjustment agreement.
>
> (4) Expiration or satisfaction of an informal family services plan agreement.
>
> (5) Expiration, satisfaction, or vacation of a juvenile disposition or adult sentence.
>
> (6) Dismissal of the proceeding.

The specific judgment giving rise to this appeal stems from the trial court's January 17, 2017 denial of G.B. and R.B.'s petition to intervene. We reverse that

judgment, order that the grandparents are allowed to intervene, and remand the case to the trial court for an appropriate hearing with proper notice to G.B. and R.B. The grandparents' right to file a civil custody proceeding is reserved pending final adjudication of this CINC proceeding.

## CONCLUSION

Considering the record in its entirety, and in accordance with *Evans v. Lungrin,* 708 So.2d 731, we find that the trial court's interpretation of La.Ch.Code art. 697 and the decisions made that resulted in a denial of the grandparents' petition to intervene were erroneous and we reverse same. Additionally, we remand this matter to the trial court to conduct a case review hearing in accordance with La.Ch.Code art. 623 and consistent with the views expressed in this opinion, with appropriate findings in the trial court of what is in the best interest of the child. G.B. and R.B. are allowed to intervene and participate in this and all future hearings and may present evidence as to what may be in the best interest of the child. They are to be served with proper notice of all hearings.

**REVERSED WITH INSTRUCTIONS and REMANDED.**